Motion for Rehearing Granted; Affirmed; Opinion of February 12, 2008
Withdrawn and Opinion on Rehearing filed May 22, 2008








 

Motion
for Rehearing Granted; Affirmed; Opinion of February 12, 2008 Withdrawn and
Opinion on Rehearing filed May 22, 2008.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00096-CV

____________

 

CLEAR LAKE CITY WATER AUTHORITY, Appellant

 

V.

 

FRIENDSWOOD DEVELOPMENT COMPANY,
LTD.,
Appellee

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 06-63998

 



 

O P I N I O N   O N   R E H E A R I N G 

Appellee Friendswood Development Company, Ltd.=s motion for
rehearing is granted.  The court=s opinion issued
on February 12, 2008, is withdrawn, and this Opinion on Rehearing is issued in
its place.  








This
case arises from a contract dispute between a water authority and a development
company. When the development company brought suit asserting breach of
contract, the water authority asserted governmental immunity from suit.  By
interlocutory appeal, the water authority now challenges the trial court=s order denying its plea to the
jurisdiction.  Concluding that the Texas Legislature waived the water authority=s immunity from suit under section
271.152 of the Texas Local Government Code, we affirm the trial court=s order.

I.  Factual and Procedural Background

Appellant
Clear Lake Water Authority (the AAuthority@) is a conservation and reclamation
district
under article 16, section 59 of the Texas Constitution, and it operates as a
water control and improvement district under Texas statutes.[1] 
Appellee Friendswood Development Company, Ltd. (AFriendswood
Development@) is a developer owning land within the boundaries of
the Authority.

In March 1998, the Authority and Friendswood Development
executed a document entitled ASales Agreement and Lease of Facilities@ (Athe Agreement@).  Under the
Agreement, Friendswood Development was to arrange for the construction of water
distribution lines, sanitary sewer lines, and drainage facilities to provide
service to houses Friendswood Development proposed to build on its land; and
the Authority agreed to purchase or lease the completed AFacilities.@[2]








The Agreement gave the Authority the right to purchase the
Facilities with either bond proceeds or annual user fees and property taxes. 
Although the Authority had the right to use general revenues to purchase the
Facilities, it was not obligated to do so and could rely solely on bond
proceeds.  The Authority=s obligation to pay with bond proceeds was
conditioned on voter approval of bonds at a bond election.  The Authority did
not promise when it would hold a bond election, or that any bond measure would
be approved by the voters, but it did promise Athat it shall
include in any bond election it does hold subsequent to the effective date of
this Agreement bond authorization in an amount sufficient to pay the purchase
price of the Facilities.@[3]

The Authority conducted bond elections in May 1998 and
October 1998.  In each of those elections, a measure was proposed that would
have authorized the issuance of bonds sufficient to permit the Authority to
purchase the Facilities.  Both times, the measures failed.

In July 2004, the Authority=s board of
directors voted to conduct another bond- authorization election, scheduled for
September 11, 2004.  In the election, the Authority sought voter authorization
of $29.1 million in bonds, but that amount did not include funds required to
pay for the Facilities.  In the September 2004 election, the voters approved by
a ten-to-one margin authorization of the $29.1 million in bonds.  According to
Friendswood, the Authority currently uses the Facilities free of charge.

Friendswood Development sued the Authority, asserting that
under the Agreement the Authority was obligated to submit the same proposition
to the voters in every later bond election it held, unless and until the voters
approved bonds to fund the purchase of the Facilities.  Friendswood Development
claimed the Authority breached the contract by refusing to submit such a
proposition to the voters in the September 2004 election. Friendswood
Development sought more than $1 million in damages purportedly resulting from
the Authority=s alleged breach of contract.








The Authority filed a plea to the jurisdiction or,
alternatively, motion for summary judgment, contending governmental immunity
from suit bars this action.  Friendswood Development responded to the plea and
filed its own motion for summary judgment.  On February 5, 2007, the trial
court denied the Authority=s plea to the jurisdiction, and the
Authority filed this appeal the same day.  The following day, Friendswood
Development filed an emergency motion requesting the district court to vacate
its February 5 denial to the plea to the jurisdiction. On February 8, 2007, the
district court granted Friendswood Development=s emergency motion
and vacated the February 5 order.  On February 12, the district court signed an
order in which it sustained certain evidentiary objections by Friendswood Development
and an order in which the court again denied the Authority=s plea to the
jurisdiction.  The district court also signed an order in which it granted
final summary judgment awarding Friendswood Development $1,120,235.99 in
damages.  The same day, Friendswood Development moved this court to dismiss the
Authority=s appeal, asserting that, by vacating the February 5
order, the district court had rendered the appeal moot.  This court denied
Friendswood Development=s motion.  See Tex. R. App. P. 27.3. 

II.  Issue Presented for Review

The Authority presents a single issue for review: Did the
district court err in denying the Authority=s plea to the
jurisdiction?  The Authority contends, as a matter of law, that governmental
immunity bars Friendswood Development=s lawsuit.

III.  Applicable Law and
Standard of Review

A.      Immunity








When a political subdivision of the State is immune from
suit under the doctrine of governmental immunity, a court lacks subject-matter
jurisdiction over the suit.[4] 
Tex. Dep=t of Transp. v. Jones, 8 S.W.3d 636,
638 (Tex. 1999).  Governmental immunity has two components: immunity from
liability and immunity from suit.  Tooke v. City of Mexia, 197 S.W.3d
325, 332 (Tex. 2006).  Immunity from suit bars suit against the entity
altogether.  Id.  When a governmental entity enters into a contract,
that entity waives immunity from liability and voluntarily binds itself, just
as any other party would, to the terms of the contract, but that entity does
not thereby waive immunity from suit.  Id.  For there to be a waiver of
immunity from suit in the contract-claim context, the Legislature must have
waived immunity from suit as to the claim in question by clear and unambiguous
language.  See Tex. Gov=t Code Ann. ' 311.034 (Vernon
Supp. 2007) (providing that a statute shall not be construed as a waiver of
sovereign immunity unless the waiver is effected by clear and unambiguous
language); Tooke, 197 S.W.3d at 332B33 (requiring clear
and unambiguous language to waive governmental immunity).  

Courts have little difficulty in recognizing the
Legislature=s intent to waive immunity from suit when a statute
contains language expressly waiving such immunity.  See Wichita Falls State
Hosp. v. Taylor, 106 S.W.3d 692, 697 (Tex. 2003).  Absent such express
waiver language, it has been rare for Texas courts to conclude that the
Legislature waived immunity from suit.  Id.  In Wichita Falls State
Hospital, the Texas Supreme Court noted that, in the absence of express
waiver language, Awe have employed several aids to help
guide our analysis in determining whether the Legislature has clearly and
unambiguously waived sovereign immunity.@ Id.  The
high court described these aids as follows:

First, a statute that waives the State=s immunity must do so beyond doubt, even though we
do not insist that the statute be a model of Aperfect clarity.@  For example, we have found waiver when the provision in
question would be meaningless unless immunity were waived. 

Second, when construing a statute that purportedly waives sovereign
immunity, we generally resolve ambiguities by retaining immunity. In this
respect, our methodology resembles that of the United States Supreme Court when
it considers a purported waiver of the federal government=s sovereign immunity.  If the text
and history of the statute leave room to doubt whether the Legislature intended
to waive sovereign immunity, we are less likely to find a waiver.

Third, if the Legislature requires that the State be joined in a
lawsuit for which immunity would otherwise attach, the Legislature has
intentionally waived the State=s sovereign immunity. 








Finally, we are cognizant that, when waiving immunity by explicit
language, the Legislature often enacts simultaneous measures to insulate public
resources from the reach of judgment creditors.  Therefore, when deciding
whether the Legislature intended to waive sovereign immunity and permit
monetary damages against the State, one factor to consider is whether the
statute also provides an objective limitation on the State=s potential liability.   

Id. at 697B98 (citations omitted).  Even in Wichita Falls
State Hospital, the
Texas Supreme Court did not state that courts are required to use these aids in
determining whether the Legislature clearly and unambiguously has waived
governmental immunity.  See id. at 697B702.  In addition, in Tooke,
the Texas Supreme Court noted that the court of appeals had used these four
aids in its analysis; however, the Tooke court did not use these aids in
its determination as to whether the statute in question clearly and
unambiguously waived governmental immunity. See Tooke, 197 S.W.3d at
330B45.  We have not
found any instances of the Texas Supreme Court using these aids after its
decision in Tooke.  The Tooke court did not approve or disapprove
of these aids.  It
appears that courts may use them but are not required to do so.

B.        Standard of Review

In filing a plea to the jurisdiction, a litigant challenges
the trial court=s subject-matter jurisdiction.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  Because
subject-matter jurisdiction is a question of law, we conduct a de novo review
of the trial court=s ruling on the plea.  See Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).  Upon review, we consider the
pleadings and the evidence pertinent to the jurisdictional inquiry; we do not
consider the merits of the case.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002). 








We
review the trial court=s interpretation of applicable statutes de novo.  See
Johnson v. City of Fort Worth, 774 S.W.2d 653, 655B56 (Tex. 1989).  In construing a
statute, our objective is to determine and give effect to the Legislature=s intent.  See Nat=l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  If
possible, we must ascertain that intent from the language the Legislature used
in the statute and not look to extraneous matters for an intent the statute
does not state.  Id.  If the meaning of the statutory language is
unambiguous, we adopt the interpretation supported by the plain meaning of the
provision=s words.  St. Luke=s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997). 
We must not engage in forced or strained construction; instead, we must yield
to the plain sense of the words the Legislature chose.  See id.

IV.  Analysis

In 1963,
the Texas Legislature created the Authority as a conservation and reclamation
district
under article 16, section 59 of the Texas Constitution. See Tex. Const. art. XVI, ' 59; Act of Apr.
18, 1963, 58th Leg., R.S., ch. 101, 1963 Tex. Gen. Laws 164, 173. The Authority
exercises the rights, powers, privileges, authority, and functions conferred
and imposed by Texas statutes regarding water control and improvement
districts.  See id.  Such water control and improvement districts are
political subdivisions of the State and generally are entitled to governmental
immunity.  See Tarrant Reg=l Water Dist. v.
Gragg, 151 S.W.3d 546, 549B50 (Tex. 2004) (concluding that water
control and improvement district is a political subdivision of the State
generally entitled to governmental immunity); Clear Lake City Water Auth. v.
Clear Lake Utils. Co., 549 S.W.2d 385, 391 (Tex. 1977) (concluding that the
Authority is a political subdivision of the State).  Therefore, under the
doctrine of governmental immunity, the Authority is immune from suit in this
case unless the Legislature has waived the Authority=s immunity from
suit by clear and unambiguous language.  See Tooke, 197 S.W.3d at 332B33; see also Tex. Gov=t Code Ann. ' 311.034.  In its
pleadings and in its briefing, Friendswood Development asserts that the
Legislature waived the Authority=s immunity from
suit under section 49.066 of the Texas Water Code, or in the alternative, under
section 271.152 of the Texas Local Government Code.  See Tex. Water Code Ann. ' 49.066 (Vernon
2000); Tex. Loc. Gov=t Code Ann. ' 271.152 (Vernon
2005). 








A.      Did the Legislature waive
the Authority=s immunity from suit under Texas
Water Code section 49.066?

Chapter 49 of the Texas Water Code applies to the
Authority.  See Tex. Water Code
Ann. '' 49.001(a)(1), 49.002 (Vernon 2000 & Vernon Supp.
2006); Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture,
220 S.W.3d 25, 29 (Tex. App.CSan Antonio 2006, pet. filed).  Section
49.066, entitled ASuits,@ provides: 

(a)  A district may sue and be sued in the courts of this state in the
name of the district by and through its board.  A suit for contract damages may
be brought against a district only on a written contract of the district
approved by the district=s board.  All courts shall take
judicial notice of the creation of the district and of its boundaries.

(b)  Any court in the state rendering judgment for debt against a
district may order the board to levy, assess, and collect taxes or assessments
to pay the judgment.

(c)  The president or the general manager of any district shall be the
agent of the district on whom process, notice, or demand required or permitted
by law to be served upon the district may be served.

(d)  Except as provided in Subsection (e), no suit may be instituted in
any court of this state contesting:

(1)  the validity of the creation and boundaries of
a district created under this code;

(2)  any bonds or other obligation created under
this code; or

(3)  the validity or the authorization of a contract
with the United States by the district.








(e)  The matters listed in Subsection (d) may be judicially inquired
into at any time and determined in any suit brought by the State of Texas
through the attorney general.  The action shall be brought on good cause shown,
except where otherwise provided by other provisions of this code or by the
Texas Constitution.  It is specifically provided, however, that no such
proceeding shall affect the validity of or security for any bonds or other
obligations theretofore issued by a district if such bonds or other obligations
have been approved by the attorney general as provided by Section 49.184.[5]

(f)  A district or water supply corporation shall not be required to
give bond for appeal, injunction, or costs in any suit to which it is a party
and shall not be required to deposit more than the amount of any award in any
eminent domain proceeding.

Tex. Water Code Ann. ' 49.066.  In 1997,
this court concluded that the Legislature had waived the immunity from suit of
all districts covered by section 49.066 based on the Asue and be sued@ sentence in
section 49.066(a).  See Loyd v. ECO Res., Inc., 956 S.W.2d 110, 122
(Tex. App.CHouston [14th Dist.] 1997, no pet.) (relying on Missouri
Pacific R.R. Co. v. Brownsville Navigation Dist., 453 S.W.2d 812 (Tex.
1970)).  However, this part of Loyd is no longer good law following the
Texas Supreme Court=s overruling of Missouri Pacific in
Tooke.[6] 
See Tooke, 197 S.W.3d at 342B43.  We have found
only three post-Tooke cases addressing whether the Legislature waived
immunity from suit in section 49.066, and in all of these cases the courts
conclude there is no waiver.[7]

First, we note that neither immunity from suit nor
governmental immunity is expressly waived in section 49.066; these terms are
not even mentioned in this section.  See Tex. Water Code Ann. ' 49.066. 
Therefore, this court must determine if this is one of the rare instances in
which the Legislature waived immunity from suit by clear and unambiguous
language but without express reference to immunity.  See Wichita Falls State
Hosp., 106 S.W.3d at 697. 








The language in the first and third sentences of section
49.066(a) was contained in the statute at issue in Missouri Pacific. 
See Tooke, 197 S.W.3d at 338; Missouri Pacific R.R. Co., 453 S.W.2d
at 813.  We are bound by the Tooke court=s conclusion that
such language alone is not sufficient to waive immunity from suit.  See
Tooke, 197 S.W.3d at 342B43.  








In 1999, the Legislature amended section 49.066(a) to add
what is now the second sentence of section 49.066(a).  See Act of May
30, 1999, 76th Leg., R.S., ch. 1354, ' 8, 1999 Tex. Gen.
Laws 4589, 4591.  In this sentence, the Legislature states that a suit for
contract damages may be brought against a district only on a written contract
of the district approved by the district=s board; however,
it does not state that all parties to such contracts may sue the district for
breach of these contracts or that immunity from suit as to all such claims is
waived.  The Tooke court held that no waiver of immunity from suit is
contained in language stating that the governmental entity Amay contract and
be contracted with, implead and be impleaded in all courts and places and in
all matters whatsoever. . . .@  Tooke,
197 S.W.3d at 344 (emphasis added).  The Tooke court concluded that such
language was not a clear and unambiguous waiver of immunity from suit; rather,
the Tooke court concluded all that was clearly stated was that the
governmental entity can be sued and impleaded in court when suit is permitted,
not that immunity is waived for all suits.  Id.  Likewise, we conclude
that all the second sentence of 49.066(a) clearly conveys is that, if another
statute (for example section 271.152[8])
waives immunity as to a contract suit against a district, then such a suit may
be brought only on the type of contract described in section 49.066(a).  Id.;
Bexar Metro. Water Dist., 220 S.W.3d at 31.  If, in 1999, the
Legislature intended to waive immunity from suit for all water districts as to
claims for breach of written contracts approved by the district=s board, then it
would seem strange that six years later the Legislature would expressly waive
immunity as to claims based on certain types of written contracts.[9] 
See Tex. Loc. Gov=t Code Ann. ' 271.152 (Vernon
2005); Bexar Metro. Water Dist., 220 S.W.3d at 32. 

Similarly, in section 49.066(b), the Legislature describes
relief that may be awarded by any court rendering judgment for debt against a
district.  See Tex. Water Code
Ann. ' 49.066(b).  In this statute, the Legislature did not
state that any suits against a district on a debt are permitted or that
immunity is waived as to such suits.  We conclude that all section 49.066(b)
clearly says is that, if, in another statute, the Legislature waives immunity
from suit against a district on a debt, then any court rendering judgment on
that debt may award the relief stated in section 49.066(b).  See Tooke,
197 S.W.3d at 344; Bexar Metro. Water Dist., 220 S.W.3d at 31.  

In section 49.066(c), the Legislature specifies the people
who are the agents on whom may be served any process, notice, or demand
required or permitted by law to be served on the Authority.  See Tex. Water Code Ann. ' 49.066(c).  The
Legislature does not state when the Authority=s agents may be
served with any process, notice, or demand, and it does not clearly and
unambiguously waive immunity from suit.  See Tooke, 197 S.W.3d at 344; Bexar
Metro. Water Dist., 220 S.W.3d at 31.  








In section 49.066(d) and (e), the Legislature prohibits
parties other than the Attorney General of Texas from instituting certain kinds
of suits and states that the Attorney General may bring suit on behalf of the
State, on good cause shown, to inquire into the matters listed in section
49.066(d).  Because the present suit was not brought by the Attorney General
and because it does not prompt inquiry into the matters listed in section
49.066(d), the Legislature does not waive the Authority=s immunity from
suit in this case in this part of section 49.066. See Bexar Metro.
Water Dist., 220 S.W.3d at 31.  

In section 49.066(f), the Legislature states that the
Authority cannot be required to give bond for appeal, injunction, or costs in
any suit to which it is a party and that the Authority is not required to
deposit more than the amount of any award in any eminent domain proceeding.  See
Tex. Water Code Ann. ' 49.066(f).  The
instant case is not an eminent domain proceeding.  In section 49.066(f), the
Legislature does not state when the Authority may properly be made a party to a
suit, and it does not clearly and unambiguously waive immunity from suit.  See
Tooke, 197 S.W.3d at 344; Bexar Metro. Water Dist., 220 S.W.3d at
31.  This language may properly apply to suits in which there is no immunity
from suit, for example unconstitutional takings cases or claims under the Texas
Tort Claims Act, or to cases in which immunity has not been waived and the
Authority is seeking a judicial determination in this regard.  See Bexar
Metro. Water Dist., 220 S.W.3d at 31.  








Though we are not required to do so, we choose to examine
the four aids from Wichita Falls State Hospital.  See 106 S.W.3d
at 697B98.  As to the
first aid, for the reasons stated above, the Legislature has not waived the
Authority=s immunity from suit in this case beyond doubt, and
section 49.066 would not be meaningless unless immunity from suit is waived. 
As to the second aid, the text and history of section 49.066 leave room to
doubt whether the Legislature intended to waive the Authority=s governmental
immunity.  As to the third aid, the Legislature does not require in section
49.066 that the State or the Authority be  joined in any lawsuit.  As to the
fourth aid, section 49.066 does not provide any objective limitation on the
State=s potential
liability.[10]
Compare Tex. Water Code Ann. ' 49.066 (failing
to impose any objective limitation on the State=s potential
liability), with Tex. Loc. Gov=t Code Ann. ' 271.153 (Vernon
2005) (imposing objective limits on recovery under section 271.152 by excluding
recovery for punitive damages, most consequential damages, and damages for
unabsorbed home office overhead).  Therefore, none of the Wichita Falls State Hospital aids weighs in favor of the
existence of a clear and unambiguous waiver of immunity from suit in section
49.066.

In sum,
after carefully reviewing section 49.066 under existing precedents, we conclude
that in this statute the Legislature did not waive the Authority=s immunity from suit by clear and
unambiguous language.[11]  See
Rancho Viejo, Inc., 2008 WL 384320, at *2B4; Boyer, Inc., 2008 WL 163560,
at *3; Bexar Metro. Water Dist., 220 S.W.3d at 29B32.  

B.      Did the Legislature waive
the Authority=s immunity from suit under Local
Government Code section 271.152?








Friendswood
Development also contends that the Legislature waived the Authority=s immunity from suit in section
271.152 of the Texas Local Government Code.  See Tex. Loc. Gov=t Code ' 271.152.  In 2005, the Legislature
enacted subchapter I of chapter 271 of the Local Government Code, comprising
sections 271.151B.160.[12]  See Act
of May 23, 2005, 79th Leg., R.S., ch. 604, ' 1, 2005 Tex. Gen. Laws 1548
(codified at Tex. Loc. Gov=t Code '' 271.151B.160).  

The Language of Section 271.152

Unlike
Texas Water Code section 49.066, section 271.152 of the Local Government Code
contains an express waiver of immunity from suit as to certain
breach-of-contract claims:

A local
governmental entity that is authorized by statute or the constitution to enter
into a contract and that enters into a contract subject to this subchapter
waives sovereign immunity to suit for the purpose of adjudicating a claim for
breach of the contract, subject to the terms and conditions of this subchapter.


Tex.
Loc. Gov=t Code ' 271.152.  For an entity to waive
immunity from suit as to contract claims under section 271.152, the following
statutory criteria must be satisfied:

(1)       The entity must be A[a]
local governmental entity that is authorized by statute or the constitution to
enter into a contract.@

(2)       The entity must enter into Aa contract subject to this subchapter.@ 








(3)       The claim must be for breach of the contract [13]
and be asserted in a civil suit in Acounty
or state court@ or in an Aauthorized
arbitration proceeding@ in accordance with any Amandatory procedures established in the contract . . . for the
arbitration proceedings.@

See Tex.
Loc. Gov=t Code '' 271.151, 271.152.  In this case, the
parties do not dispute that the first and third elements are satisfied.  As to
the second element, the Authority does not dispute that it entered into the
Agreement; however, the Authority argues that the Agreement is not Aa contract subject to this
subchapter,@ which is defined as Aa written contract stating the essential terms of the
agreement for providing goods or services to the local governmental entity that
is properly executed on behalf of the local governmental entity.@  Id. ' 271.151(2).  The Agreement is a
written contract, and the Authority has not asserted that the Agreement was not
properly executed on the Authority=s behalf.  Therefore, the issue at
hand is whether the Agreement  Astat[es] the essential terms of the agreement for providing
goods or services to the [Authority].@[14]  See id. 








The Agreement

In the
underlying suit, Friendswood Development seeks damages resulting from the
Authority=s alleged breach of the Agreement by its failure to include in a bond
election subsequent to the effective date of the Agreement a proposal for bond
authorization in an amount sufficient to pay the purchase price for the
Facilities, which already are installed.  If the voters had approved such a
bond-authorization proposal, Friendswood Development alleges, then the
Authority would have an obligation under the Agreement to buy the Facilities,
currently owned by Friendswood Development, with the bond proceeds. The
Agreement contains the following relevant provisions: 

$        The Authority is authorized to provide,
among other things, water supply, waste disposal, and drainage facilities to
the land within its boundaries.

$                  
Friendswood
Development is developing land within the Authority and desires that water
supply, waste disposal, and drainage facilities be provided to such land prior
to the time at which the Authority can obtain voter approval and pay for the
construction and acquisition of such facilities.

$                  
Friendswood
Development and the Authority desire to provide for the design, engineering,
construction, acquisition, operation, maintenance, lease, and sale of all water
distribution lines, sanitary sewers, and drainage facilities required to serve
the subdivision in question (hereinafter ASubdivision@), such water distribution lines, sanitary sewers, and drainage
facilities are collectively referred to in the Agreement as the AFacilities.@








$                  
Friendswood
Development will cause the Facilities to be constructed under contracts with
third-party contractors, in accordance with the rules of a state conservation
commission.  Friendswood Development shall provide for inspection by the
Authority=s engineers of work performed under
the third-party contracts, and these engineers have the right to halt
construction work until the contractor in question complies with the plans and
specifications.  These third-party contracts are subject to approval by the
Authority=s Board of Directors.

$                  
Subject to
Friendswood Development=s compliance with the Agreement and
reasonable development of the Subdivision, the Authority agrees to serve the
water and wastewater requirements of the Subdivision, subject to certain limitations.

$                  
Friendswood
Development agrees to sell to the Authority all completed portions of the
Facilities.  The Authority also accepts assignment of any unperformed portion
of the Agreement no more than 30 days after the Authority receives bond proceeds
for the Authority to use as payment for the purchase price.

$                  
Friendswood
Development agrees to lease the Facilities to the Authority without charge
until the Authority purchases the Facilities.

$                  
Friendswood
Development agrees, at its own expense, to award and diligently prosecute a
contract or contracts for, and to otherwise cause to be constructed, all
streets, roads, and bridges described in the respective plats for the
Subdivision in accordance with the plans and specifications approved by the Authority=s engineers.

Our
task is to determine if the
Agreement contains the essential terms for providing goods or services to the
Authority, as contemplated by section 271.151(2).  We find guidance in a
relatively recent Texas Supreme Court decision, Ben Bolt. See Ben
BoltBPalito Blanco Consol. Indep. Sch. Dist. v. Texas Political
Subdivisions Property/Casualty Joint Self-Insurance Fund, 212 S.W.3d 320, 326B27 (Tex. 2006).  

The Texas Supreme Court applied
Section 271.151(2) in Ben Bolt. 








In Ben
Bolt, the only case from the Texas Supreme Court applying the language of
section 271.151(2),[15] our high
court took an expansive view of section 271.152 in determining that in it the
Legislature provided a clear and unambiguous waiver of the local governmental
entity=s immunity from suit as to the
contract in question.[16]  See Ben Bolt, 212 S.W.3d at 326B27.  In that case, a school district
filed a declaratory-judgment action against a self-insurance fund composed of
ninety-two local governmental entities.  See id. at 322.  The school
district sought a declaration that a loss it had sustained was a Acovered occurrence@ under its insurance policy with the
fund.  See id. at 323.  The fund asserted governmental immunity.  See
id.  








After
determining that the fund enjoyed governmental immunity in its own right, the
Texas Supreme Court addressed whether, in section 271.152, the Legislature had
waived the fund=s immunity from suit as to the declaratory-judgment action in
question.  See id. at 327.  The fund asserted that the agreement at
issue in the case C the insurance policy C  did not involve the provision of
goods or services to the fund because the school district was simply
paying the fund for insurance coverage.  See id. at 324B26.  Nonetheless, the Ben Bolt
court rejected this argument based on the fund=s admission that its members,
including the school district in question, elect a governing board, a
subcommittee of which resolves claims disputes.  See id.  The Ben
Bolt court concluded that, by participating in the election of the fund=s governing board, the school
district provided services to the fund, and the high court found that this
provision of services satisfied the statutory requirement of Aa written contract stating the
essential terms of the agreement for providing goods or services to the local
governmental entity.@  See id.  The Ben Bolt court reached this
conclusion without requiring that this provision of services by the members of
the fund be stated in the agreement (the insurance policy).[17] 
Even though the essence of the agreement (insurance policy) appeared to be an
insurance transaction in which the only thing provided to the fund was money,
the Ben Bolt court concluded that the agreement fell within the scope of
the statutory language because the school district was a member of the fund and
the fund=s members elected the fund=s governing board.[18] 
ATo [this] extent, at least, the Fund=s members provide services to the
Fund.@  Id. at 327.








The Ben
Bolt court acknowledged that, under section 271.152, the Legislature has
not waived immunity as to all contracts entered into by local government
entities; rather, it has waived immunity only as to written contracts Astating the essential terms of the
agreement for providing goods or services to the local governmental entity that
[are] properly executed on behalf of the local governmental entity.@[19]  Tex. Loc. Gov=t Code ' 271.151(2); Ben Bolt, 212 S.W.3d at 326B27.  Nonetheless, the Ben Bolt
court broadly construed the meaning of this statutory language.  See Ben
Bolt, 212 S.W.3d at 326B27.  We apply the reasoning of Ben Bolt to this
appeal.

The
sale of the Facilities is not a provision of goods.








With Ben
Bolt as our guide, we first note that the Agreement  contemplates several
actions by Friendswood.  One action on which Friendswood relies is the
potential sale of the Facilities to the Authority.  The Facilities have been
installed and affixed to the land so that they are not goods; therefore, the
potential sale to the Authority of fixtures that have become part of the real
property does not involve the provision of goods.  See Tex. Bus. & Com. Code Ann. ' 2.105(a) (Vernon 1994) (defining
sale-of-goods contracts as involving the sale of Aall things . . . moveable . . . at
the time of identification to the contract@); City of San Antonio v. Hartman,
201 S.W.3d 667, 672 n.19 (Tex. 2006) (holding that terms not defined in a
statute are given their ordinary meaning); San Antonio Area Found. v. Lang,
35 S.W.3d 636, 640 (Tex. 2000) (defining real property as Aland, and generally whatever is
erected or growing upon or affixed to land@); Logan v. Mullis, 686 S.W.2d
605, 607 (Tex. 1985) (concluding that a tank car converted to a drainage
culvert and affixed to land is real property, not personalty); G-W-L, Inc.
v. Robichaux, 643 S.W.2d 392, 394 (Tex. 1982) (concluding that sale of real
property and improvements thereon is not a sale of goods), overruled in part
on other grounds by Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 355
(Tex. 1987);  Bexar Metro. Water Dist., 220 S.W.3d at 32; Black=s Law Dictionary 714 (8th ed. 2004) (defining Agoods@ as Atangible or movable personal property
other than money; esp., articles of trade or items of merchandise [as in] [>]goods and services[=]@).  As a result, the potential sale
of the Facilities to the Authority does not involve the provision of goods. 

Under the Ben Bolt
decision, Friendswood
Development provided services to the Authority.

The
Agreement, however, has another dimension beyond the sale of the Facilities C it contemplates hiring third parties
to construct the Facilities and to build the streets, roads, and bridges for
the Subdivision.  We acknowledge this action appears to be directed towards and
to benefit the Subdivision and its residents, rather than the Authority.[20] 
Likewise, based on the language of the Agreement, these services appear to be
provided to the Subdivision and its residents rather than to the Authority. We
also note that Friendswood Development did not perform the construction
services with its employees; instead, it retained the services of independent
contractors to perform this work.[21]  








Nonetheless,
the parties plainly state in the Agreement that the Authority is authorized to
provide, among other things, water supply, waste disposal, and drainage
facilities to the land within its boundaries.  If the school district=s participation in the election of
the fund=s governing board was sufficient to
constitute the provision of services in the insurance contract in Ben Bolt,
then we conclude that Friendswood Development=s agreement to hire third parties to
construct the Facilities and to build the streets, roads, and bridges is
likewise sufficient to constitute the provision of services to the Authority. 
Applying the Ben Bolt court=s liberal construction of the
applicable statute, we conclude that the Agreement is a written contract
stating the essential terms of the agreement for providing services to the
Authority for the construction of the Facilities as well as for the construction
of streets,
roads, and bridges in
the Subdivision.[22]  See Tex. Loc. Gov=t Code '' 271.151, 271.152; Ben Bolt,
212 S.W.3d at 326B27.  Therefore, the Authority=s immunity from suit for all claims
for breach of the Agreement has been waived under section 271.152. 

                                                 V.  Conclusion








  In section 49.066 of the Texas Water Code, the
Legislature did not waive the Authority=s immunity from
suit by clear and unambiguous language.  However, applying the Texas Supreme Court=s decision in Ben Bolt, we
conclude that the Agreement falls within the scope of the type of contracts as
to which the Legislature waived immunity in section 271.152 of the Texas Local
Government Code.[23]  See Tex. Loc. Gov=t Code '' 271.151, 271.152; Ben Bolt,
212 S.W.3d at 326B27.  Accordingly, we overrule the Authority=s issue and affirm
the trial court=s order denying the Authority=s plea to the
jurisdiction.

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered, Opinion of
February 12, 2008 Withdrawn, and Opinion on Rehearing filed May 22, 2008.

Panel
consists of Justices Anderson, Fowler, and Frost.









[1]  See Tex.
Const. art. XVI, ' 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101,
1963 Tex. Gen. Laws 164, 173; Tex. Water
Code Ann. chs. 49, 51 (Vernon 2000 & Supp. 2007).





[2]  We refer to the water distribution lines, sanitary
sewer lines, and drainage facilities collectively as the AFacilities.@





[3]  Original emphasis omitted.





[4]  Often, courts use the terms Asovereign immunity@
and Agovernmental immunity@ interchangeably; nevertheless, they are two distinct concepts.  Wichita
Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  ASovereign immunity@
refers to a State=s immunity from suit and liability.  Id.  Its
protection extends not only to the State, but also to the varying divisions of
state government, including agencies, boards, hospitals, and universities.  AGovernmental immunity@ protects political subdivisions of the State, including counties,
cities, and school districts.  Id.





[5]  Section 49.184 of the Water Code refers to approval
of bonds by the Attorney General and the registration of bonds.  See Tex. Water Code Ann. ' 49.184 (Vernon Supp. 2007).





[6]  Likewise, the portion of a 2003 case from this court
indicating that the Legislature has waived the Authority=s immunity from suit is no longer good law after Tooke. 
See Clear Lake City Water Auth. v. Kirby Lake Development, Ltd., 123
S.W.3d 735, 750B51 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied).





[7]  See Valley Mun. Utility Dist. No. 2 v. Rancho
Viejo, Inc., No. 13-07-545-CV, 2008 WL 384320, at *2B4 (Tex. App.CCorpus
Christi Feb. 14, 2008, no pet. h.) (mem. op.); Boyer, Inc. v. Trinity River
Auth. of Tex., No. 2-07-052-CV, CS.W.3dC,C, 2008 WL
163560, at *3 (Tex. App.CFort Worth Jan. 17, 2008, no pet. h.); Bexar Metro.
Water Dist., 220 S.W.3d at 29B32. 






[8]  We use this example only as an illustration.  We
recognize that the Legislature enacted section 271.152 six years after it
enacted the second sentence in section 49.066(a).





[9]  Friendswood Development asserts that the Legislature
included water districts in the definition of a Alocal governmental entity@ in
section 271.152 to reemphasize its prior intent to waive immunity from suit
that the courts allegedly have ignored.  However, this argument is inconsistent
with the language of section 271.152, in which the Legislature does not waive
immunity from suit as to all claims against water districts (as some allege was
the intent in the first sentence of section 49.066(a)) and the Legislature does
not waive immunity from all suits on board-approved, written contracts (as some
allege was the intent in the second sentence of section 49.066(a)).





[10]  Friendswood Development asserts that, in section
49.066, the Legislature does impose objective limitations on the State=s potential liability because it requires
board-approved written contracts, prevents private parties from contesting the
matters stated in section 49.066(d), and relieves the Authority from having to
post bonds or deposit amounts beyond the amount of the award in eminent domain
proceedings.  However, the fourth aid looks to objective limitations imposed on
the governmental entity=s liability on the claims for which immunity allegedly
has been waived.  Precluding certain types of suits does not fit in this
category.  Waiving any bond requirement does limit the governmental entity=s potential litigation expenses; however, governmental
entities are often exempted from such ancillary expenses, regardless of whether
immunity has been waived.  In addition, such a waiver does not limit the
governmental entity=s exposure as to the claims for which the Legislature
allegedly waived immunity.  Furthermore, limiting the amount the governmental
entity has to deposit when it is condemning land in an eminent-domain
proceeding is not a limitation on the amount of any claims against the
governmental entity.





[11]  Friendswood Development asserts that this court
should give significance to the fact that the Legislature used Asue and be sued@
language at a time when the Texas Supreme Court had held that this language
waived immunity from suit.  However, the Tooke court gave this fact no
significance; therefore, we give this fact no significance.  See Tooke,
197 S.W.3d at 333B42; Bexar Metro. Water Dist., 220 S.W.3d at
30.  





[12]  This section applies to claims that arise before its effective date of
September 1, 2005:

 

only if sovereign immunity has not
been waived with respect to the claim before the effective date of this Act. A
claim that arises under a contract executed before the effective date of this
Act and with respect to which sovereign immunity has been waived is governed by
the law in effect on the date the contract was executed, and the former law is
continued in effect for that purpose.

 

Act of May 23, 2005, 79th Leg.,
R.S., ch. 604, ' 2, 2005 Tex. Gen. Laws 1548, 1549.





[13]  The Authority also asserts that, because Friendswood
Development alleges the Authority breached the Agreement only in regard to the
potential sale of the Facilities, the other parts of the Agreement are not
relevant to the issue of whether section 271.152 waives the Authority=s immunity in this case.  However, under the
unambiguous language of section 271.152, if the Agreement is Aa written contract stating the essential terms of the
agreement for providing goods or services to the local governmental entity that
is properly executed on behalf of the local governmental entity,@ then the Authority Awaives sovereign immunity to suit for the purpose of adjudicating a claim
for breach of the contract, subject to the terms and conditions of this
subchapter.@  Tex. Loc. Gov=t
Code ' 271.152.  Under this statutory regime, once the
prerequisites for waiver of immunity are shown to be satisfied, all claims for
breach of the contract in question are subject to the Legislature=s waiver of immunity.  See Tex. Loc. Gov=t
Code ' 271.151, et seq.  In addition, in Ben Bolt,
the Texas Supreme Court concluded that the Legislature had waived immunity
under this statute even though the court concluded that the part of the
contract on which the plaintiff based its claim did not involve the provisions
of good or services to the local governmental entity.  See Ben BoltBPalito Blanco Consol. Indep. Sch. Dist. v. Texas
Political Subdivisions Property/Casualty Joint Self-Insurance Fund, 212 S.W.3d 320, 327 (Tex. 2006) (stating that, for
there to be a waiver of immunity under section 271.152, the suit must be for
breach of Aa written contract stating the essential terms of the
agreement for providing goods or services to the local governmental entity that
is properly executed on behalf of the local governmental entity@).  





[14]  In response to Friendswood=s motion for rehearing on appeal, the Authority
asserts, among other things, that immunity has not been waived under section
271.152 because no amount is Adue and owed@ by the Authority under the Agreement within the
meaning of section 271.153(a)(1).  See Tex.
Loc. Gov=t Code Ann. ' 271.153(a)(1).  Presuming, without deciding, that
Friendswood had to plead damages satisfying the requirements of section
271.153(a) to fall within the waiver of immunity in section 271.152 and
liberally construing Friendswood=s
petition (as to which the Authority did not specially except), Friendswood
pleaded that its contract damages fall within the scope of section 271.153. 
However, in its plea to the jurisdiction and supplement thereto the Authority
did not assert that governmental immunity applied based on Friendswood=s failure to satisfy section 271.153(a)(1). See
Austin Indep. Sch. Dist. v. Lowery, 212 S.W.3d 827, 834 (Tex. App.CAustin 2006, pet. denied) (holding that, in
interlocutory appeal of denial of plea to jurisdiction, appellate review is
limited to the grounds asserted in the plea that the trial court denied); accord
Brenham Housing Auth. v. Davies, 158 S.W.3d 53, 61 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  Furthermore, the
Authority did not challenge, either with argument or evidence in its plea,
Friendswood=s allegation that its claim satisfies section
271.153.  See Tex. Dept. of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 221 (Tex. 2004).  In addition, the Authority did not argue section
271.153(a)(1) in its opening brief on appeal. 





[15]  Friendswood Development cites several cases
involving construction contracts for real property.  See City of Mesquite v.
PKG Contracting, Inc., 148 S.W.3d 209 (Tex. App.CDallas 2004) (involving construction of a storm
drainage system), rev=d, 197 S.W.3d 388, 388B89 (Tex. 2006) (reversing and remanding to the trial
court so that plaintiff could have opportunity to argue in the trial court that
the Legislature waived city=s immunity from
suit in the recently enacted section 271.152); City of Carrollton v.
McMahon Contracting, L.P., 134 S.W.3d 925 (Tex. App.CDallas 2004) (involving street repairs), rev=d, 197
S.W.3d 387 (Tex. 2006) (reversing and remanding to the trial court so that
plaintiff could have opportunity to argue in the trial court that the
Legislature waived city=s immunity from suit in the recently enacted section
271.152); Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch.
Dist., 123 S.W.3d 63 (Tex. App.CDallas
2003) (involving construction of new school building), rev=d, 197
S.W.3d 390, 391 (Tex. 2006) (reversing and remanding to the trial court so that
plaintiff could have opportunity to argue in the trial court that the
Legislature waived city=s immunity from suit in the recently enacted section
271.152).  These cases are not on point because, in all of these cases, the
courts of appeals did not address section 271.152, and the Texas Supreme Court
only remanded to the trial court so that the plaintiff could have the
opportunity to make an argument under the recently enacted section 271.152.





[16]  We have found no case from the Fourteenth Court of
Appeals construing this statutory language.  Friendswood Development cites City
of Houston v. Clear Channel Outdoor, Inc.; however, that case is not on
point.  See 233 S.W.3d 441, 447 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  The only issue decided in that
case was that the trial court did not err in denying the City of Houston=s plea, in which the City asserted that there was no
waiver of immunity because the contract was not Aproperly executed on behalf of the [City of Houston]@ under Local Government Code section 271.151(2).  See id. at 442B43, 445B47. 
The City of Houston court did not address the meaning or application of
the language requiring that there be Aa
written contract stating the essential terms of the agreement for providing
goods or services to the local governmental entity.@  See Tex.
Loc. Gov=t Code ' 271.151(2); City of Houston, 233 S.W.3d at 445B47. 





[17]  The Ben Bolt court stated that the fund
acknowledged that its members elected its governing board, without addressing
whether any references to these election services were contained in the
insurance policy.  Indeed, the dissenting justices stated that the record in Ben
Bolt did not contain the insurance policy.   See id. at 327, 328B29 (Willett, J., dissenting). 





[18]  The Bill Analysis for Section 271.152 states that
the bill in question clarifies and re-expresses the Legislature=s intent Athat
all local governmental entities that are given the statutory authority to enter
into contracts shall not be immune from suits arising from those contracts, subject
to the limitations set forth in [the bill].@ House Comm. on Civil Practices,
Bill Analysis, Tex. H.B. 2039, 79th Leg. R.S. (2005) (emphasis added). 
Although the Ben Bolt court quoted this sentence from the Bill Analysis
without including the final clause (emphasized above), the court clearly stated
that this statutory waiver of immunity only applied to written contracts Astating the essential terms of the agreement for
providing goods or services to the local governmental entity.@ See Ben Bolt, 212 S.W.3d at 327.  Therefore,
the quotation of the Bill Analysis does not appear to provide an additional reason
as to why the Ben Bolt court concluded the contract fell within the
scope of the statute.





[19]  See also Tex.
Loc. Gov=t Code '' 271.151(2), 271.152; Tooke, 197 S.W.3d at 342,
346 (stating that section 271.152 is a limited waiver of immunity from suit for
breach of contract under certain circumstances and that it is a more measured
approach that waives immunity as to certain contract claims). 





[20]  Relying on the Bexar Metropolitan case from
the Fourth Court of Appeals, the Authority asserts that section 271.152 does
not waive immunity for real-estate sales contracts and that the Agreement is a
real-estate sales contract.  See Bexar Metro. Water Dist., 220 S.W.3d at
32 (stating the waiver of immunity from suit in section 271.152 does not waive
a water district=s immunity for breaching a real-estate sales
contract).  If the Agreement dealt only with the potential sale of the
Facilities by Friendswood Development to the Authority, we would agree with
this argument.  However, we also must take into account the other parts of the
Agreement.  Likewise, the Rancho Viejo court based its holding on the
utility district=s failure to properly execute the contact, which was
an easement agreement that was materially different from the Agreement at issue
in this case. See Rancho Viejo, Inc., 2008 WL 384320, at *4.   





[21]  The Authority also asserts that the Agreement cannot
be a construction contract because the parties do not describe the construction
project with specificity and the Agreement was not publicly bid, as required by
the Texas Water Code.  See Tex.
Water Code Ann. '' 49.271B49.273
(Vernon 2000).  Presuming, without deciding, that these statutes apply and
prevent the Agreement from being a construction contract, that would not
prevent the Agreement from being Aa
written contract stating the essential terms of the agreement for providing
goods or services to the local governmental entity that is properly executed on
behalf of the local governmental entity.@  See
Tex. Loc. Gov=t
Code '' 271.151, 271.152.  





[22]  The Authority argues that, under the Agreement,
Friendswood Development is not obligated to construct anything for the
Authority; rather, the construction referred to in the Agreement is to be
performed by third-party contractors.  Although the Agreement requires
Friendswood Development to hire third-party contractors, the relevant statute
does not require that the provision of goods or services to the local
governmental unit be performed by employees rather than independent
contractors. See Tex. Loc. Gov=t
Code '' 271.151, 271.152. Such a narrow construction of the
statute would be inconsistent with its plain meaning and the Texas Supreme
Court=s broad construction of the statute.  See Tex. Loc. Gov=t
Code '' 271.151, 271.152; Ben Bolt, 212 S.W.3d at 326B27. 





[23]  The trial court struck the affidavit of William
Schweinle, the Authority=s general counsel.  On appeal, the Authority asserts
the trial court abused its discretion in doing so.  However, presuming without
deciding that the trial court erred in striking this affidavit, this error
would not affect our conclusion that the trial court properly denied the Authority=s plea to the jurisdiction.  Schweinle=s affidavit is replete with parol evidence and
conclusory statements.  Even if Friendswood Development had not objected to the
affidavit and even if the trial court had not stricken the affidavit, these
statements would be incompetent and amount to no evidence.  See Coastal
Transport Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex.
2004); City of Mission v. Popplewell, 294 S.W.2d 712, 717 (Tex. 1956).
Even considering all of the testimony in this affidavit, we still would reach
the same conclusion based on section 271.152 and the Ben Bolt decision. 
Because consideration of this affidavit would not materially affect our
analysis and disposition in this case, we need not and do not address the issue
of whether the trial court erred in striking the Schweinle affidavit.