COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-052-CV

BOYER, INC. APPELLANT

V.

TRINITY RIVER AUTHORITY 

OF TEXAS APPELLEE

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant Boyer, Inc. seeks a reversal of the trial court’s summary judgment for Appellee Trinity River Authority of Texas (“TRA”) dismissing Boyer’s claim for lack of jurisdiction.  Boyer argues on appeal that the trial court erred by not finding a waiver of immunity under the Texas Local Government Code because Boyer properly pleaded and provided sufficient summary judgment evidence to support the existence of a contract and a claim for breach of that contract.  Boyer also argues that trial court erred if summary judgment was based on TRA’s position that the Texas Water Code contains no waiver of immunity for Boyer’s contract claims because the water code is irrelevant to the sovereign immunity analysis.  Because we hold that the trial court erred by granting summary judgment and dismissing Boyer’s claim, we reverse the judgment and remand the cause for further proceedings.

Facts
 
and Procedural History

On December 1, 1999, TRA and Boyer entered into a contract for work on TRA’s Lake Livingston Dam Improvements Project.  Before completion of the work, TRA and Boyer executed a change order for additional work to be done by Boyer.

In June 2003, Boyer provided TRA with a revised estimate, adding  $1,611,848.85 to the estimate that it had previously submitted.  TRA did not take action on the revised estimate and subsequently terminated the contract. In January 2004, TRA instructed Boyer to demobilize and provide a final cost accounting.  Boyer submitted a balance due of $624,051.00.  TRA disputed Boyer’s calculations, which included actual field costs and a fifteen percent mark-up, and after the parties failed to resolve their disagreement, Boyer filed this suit.

TRA filed a plea to the jurisdiction and a summary judgment motion on its plea to the jurisdiction.  TRA asserted in its motion that Boyer had already been paid according to the terms of the change order.  According to TRA, although Boyer claimed that TRA was not immune from suit because Boyer’s cause of action was a suit on a written contract, in this case Boyer sought additional profits, which are consequential damages.  TRA argued that under the local government code, consequential damages are not recoverable by a plaintiff suing on a written contract.  Thus, TRA argued that it had immunity from suit.   TRA also asserted no-evidence grounds for summary judgment, arguing that there is no evidence that this is not a bona fide dispute, and thus the Prompt Payment Act does not apply here, and that there is no evidence that Boyer gave appropriate notice or followed the procedures required under the Prompt Payment Act.

In its response to TRA’s motion for summary judgment, Boyer maintained that the contract, as amended by the change order, provided for Boyer to be paid the fifteen percent mark-up.  Boyer asserted that the trial court had jurisdiction under Local Government Code sections 271.151 through 271.160 and claimed that these provisions authorize damages for a balance due under a contract, “as it may have been amended, including any compensation for the increased cost to perform the work as a direct result of owner-caused delays.”  Boyer claimed that the fifteen percent mark-up included “increased costs to perform,” as the mark-up included significant overhead costs, not just profits.  The trial court granted summary judgment
 for TRA and dismissed Boyer’s claims with prejudice for lack of subject matter jurisdiction.

Standard of Review

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.
(footnote: 1)  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.
(footnote: 2)  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
(footnote: 3)
Analysis

Sovereign immunity protects the state from suits for money damages, and the state’s political subdivisions “are entitled to such immunity—referred to as governmental immunity—unless it has been waived.”
(footnote: 4)  We will refer to both sovereign immunity and governmental immunity as “sovereign immunity.” In its first issue, Boyer argues that it properly pleaded and provided sufficient summary judgment evidence to support the existence of a contract and a claim for breach of that contract, and, therefore, under Texas Local Government Code sections 271.151 through 271.160, TRA does not have sovereign immunity.

Sovereign immunity is waived only by clear and unambiguous language.
(footnote: 5)  Texas Local Government Code section 271.152 states:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.
(footnote: 6)

Section 271.153 limits the availability of damages in a suit under this subchapter:

(a)  The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

(3) interest as allowed by law.
(footnote: 7)
This section goes on to state that “[d]amages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include . . . consequential damages, except as expressly allowed under Subsection (a)(1) [or] . . . damages for unabsorbed home office overhead.”
(footnote: 8)
 Section 271.151 defines “[c]ontract subject to this subchapter” as “a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity.”
(footnote: 9)  River authorities are included in the definition of “local governmental entity.”
(footnote: 10)
 The statutory provisions at issue contain the following historical note:

Sections 271.152, 271.153, and 271.154, Local Government Code, as added by this Act, apply to a claim that arises under a contract executed before the effective date [Sept. 1, 2005] of this Act only if sovereign immunity has not been waived with respect to the claim before the effective date of this Act.  A claim that arises under a contract executed before the effective date of this Act and with respect to which sovereign immunity has been waived is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose.

These statutes thus retroactively apply to Boyer’s claim unless sovereign immunity had been waived with respect to the claim before September 1, 2005. 
 
The parties have not asserted any clear and unambiguous waiver of sovereign immunity prior to September 1, 2005, and we have found none.
(footnote: 11)  Therefore, these sections apply in this case.

We note that although the parties dispute the application of Texas Water Code section 49.066(a) to this case, neither party asserts that this provision waives a river authority’s sovereign immunity.  Section 49.066(a) states that a district (which, under section 49.001(a)(1) includes the TRA
(footnote: 12)) “may sue and be sued” and that “a suit for contract damages may be brought . . . only on a written contract of the district approved by the district’s board.”
(footnote: 13)  We agree with the San Antonio court of appeals that this provision does not waive sovereign immunity.
(footnote: 14)
 On appeal, TRA reasserts that Boyer’s claim is for consequential damages and that the local government code does not waive immunity for suits on consequential damages.  Damages from a breach of contract may be “direct” or “consequential.”  Direct damages are “the necessary and usual result of the defendant’s wrongful act; they flow naturally and necessarily from the wrong.”
(footnote: 15)  Consequential damages are “those that result naturally, but not necessarily, from the acts complained of.”
(footnote: 16)
 TRA is correct that the statute generally does not allow recovery of consequential damages, although they may be recovered if they are part of “the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration.”
(footnote: 17)
 TRA argues that Boyer was paid as provided under the change order and that Boyer seeks “lost profits,” which are consequential damages.  TRA is correct that courts have found lost profits to be consequential damages.
(footnote: 18)  But here, Boyer complains that it was not paid amounts due under the contract between the parties.  Accordingly, whether the amount Boyer claims is due constitutes profits to Boyer is irrelevant if the contract provided for those payments.
(footnote: 19)  Boyer would be seeking consequential damages if it were seeking an amount not provided for in the contract but which it would have received had the TRA not breached the contract;
(footnote: 20) but in this case, Boyer is seeking an amount it claims that TRA contracted to pay for work Boyer has performed.  Boyer thus seeks direct damages, not consequential damages.  Consequently, Boyer’s suit on the contract is not barred by section 271.153(b)(1).

This case is distinguishable from 
Tooke v. City of Mexia
, in which the Texas Supreme Court affirmed the court of appeals’s holding that the profits sought by the Tookes under a contract were consequential damages and therefore the City of Mexia had not waived immunity.
(footnote: 21)  In that case, the court specifically noted that the Tookes did not claim that Mexia had failed to pay for work they had done.
(footnote: 22)  In this case, Boyer does claim that TRA has not paid it for work done.  The entire basis of Boyer’s suit is that it did work for which it has not been paid according to the terms agreed upon by the parties.  
Tooke
 therefore does not control our holding.
(footnote: 23)
 Accordingly, we hold that under sections 271.152 and 271.153 of the local government code, the trial court erred by granting summary judgment and dismissing the case for lack of jurisdiction.  Whether Boyer is correct that the contract, as modified by the change order, required TRA to pay the damages sought by Boyer is a question for the trial court and one we need not reach.  We sustain Boyer’s first issue.

In its second issue, Boyer argues that trial court erred if its summary judgment was based on TRA’s position that the water code contains no waiver of immunity for Boyer’s contract claims because the water code is irrelevant to the sovereign immunity analysis.  In its summary judgment motion, TRA referenced sections 49.001(a)(1), (3), 49.066(a), 49.067(b), 49.271(a), (b), and 49.273(i) of the water code.  We have already held that section 49.066(a) does not waive sovereign immunity; none of the other provisions cited by TRA either expressly waive sovereign immunity or limit any such waiver.
(footnote: 24)
 TRA stated in its summary judgment motion that the water code “prohibits suit unless on a written contract or change order approved by and made with the board of directors of TRA.”  Although TRA does not expressly tie the water code and the local government code (or otherwise explain its argument), we understand TRA to argue that, even if immunity is otherwise waived in a suit for breach of contract, the contract at issue must be in writing and approved by the board of directors.

We agree with Boyer that under the facts of this case, the water code has no relevance to a determination of immunity.  We do not need to determine if TRA was correct that the water code limits the waiver of immunity found in local government code section 271.152
 because TRA does not dispute that it validly entered into both the original contract and the change order at issue.  Thus, the water code is relevant, if at all, only to a determination of whether Boyer can seek to enforce any contract terms other than those in the written contract, as modified by the change order, and thus to what extent Boyer’s claim has merit.  We hold that the trial court erred if it based its summary judgment on TRA’s argument that under the water code, TRA had immunity from Boyer’s suit.  We sustain Boyer’s second issue.

Conclusion

Having sustained both of Boyer’s issues, we reverse the trial court’s judgment and remand this cause for further proceedings.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT
, and WALKER
, JJ.

DELIVERED: 
 January 17, 2008

FOOTNOTES
1:
Rhone-Poulenc
,
 Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
see
 
Tex. R. Civ. P.
 166a(b), (c)
.

2:
Ryland Group
,
 Inc. v. Hood
, 924 S.W.2d 120, 121 (Tex. 1996).

3:
IHS Cedars Treatment Ctr. of DeSoto
,
 Tex.
,
 Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).

4:
Reata Constr. Corp. v. City of Dallas
, 197 S.W.3d 371, 374 (Tex. 2006).

5:
Tooke v. City of Mexia
, 197 S.W.3d 325, 328-29 (Tex. 2006);
 Duhart v. State
, 610 S.W.2d 740, 742 (Tex. 1980).

6:
Tex. Loc. Gov’t Code Ann.
 § 271.152 (Vernon 2005).

7:
Id. 
at § 271.153(a).

8:
Id. 
at § 271.153(b)(1), (b)(3).

9:
Id. 
at § 271.151(2).

10:
Id. 
at § 271.151(3)(C).

11:
See Tooke
, 197 S.W.3d at 328-29 (noting that sovereign immunity is waived only by clear and unambiguous language).

12:
See 
Tex. Water Code Ann.
 § 49.001(a)(1) (Vernon Supp. 2007).

13:
Id.
 § 49.066(a).

14:
Bexar Metro. Water Dist. v. Educ. and Econ. Dev. Joint Venture
, 220 S.W.3d 25, 31 (Tex. App.—San Antonio 2006, pet. filed); 
see also Tooke
, 197 S.W.3d at 342 (holding that the words “sue and be sued” when used in a statute do not, by themselves, waive immunity).

15:
Matheus v. Sasser
, 164 S.W.3d 453, 459 (Tex. App.—Fort Worth 2005, no pet.).

16:
Id.

17:
See
 
Tex. Loc. Gov’t Code Ann.
 § 271.153(a)(1), (b)(1).

18:
See
 
Tooke
, 197 S.W.3d at 346 (stating that lost profits are consequential damages).

19:
See
 
Cont’l Holdings
,
 Ltd. v. Leahy
, 132 S.W.3d 471, 475 (Tex. App.—Eastland 2003, no pet.) (noting that lost profits may be direct damages or consequential damages).

20:
See Tooke
, 197 S.W.3d at 346; 
Olympic Waste Servs. v. City of Grand Saline
, 204 S.W.3d 496, 500 (Tex. App.—Tyler 2006, no pet.) (holding that the plaintiffs attempted to recover lost profits, which under the facts of the case were consequential damages).

21:
See Tooke
, 197 S.W.3d at 345-46.

22:
Id.

23:
See also Olympic Waste Servs.
, 204 S.W.3d at 500 (following 
Tooke 
where the plaintiff sought lost profit damages for work it would have performed under a contract had the contract not been terminated).

24:
See
 
Tex. Water Code Ann. §§ 
49.001(a)(1), (3), 49.066(a), 49.067(b), 49.271(a), (b), 49.273(i) (Vernon 2000 & Supp. 2007).