Opinion issued March 11, 2010














 

 



 



In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00955-CV

____________


CLEAR LAKE CITY WATER AUTHORITY, Appellant


V.


MCR CORPORATION, Appellee






On Appeal from the 333rd Judicial District Court of

Harris County, Texas

Trial Court Cause No. 2007-10488






MEMORANDUM OPINION

 This case arises from a contract dispute between a water authority and a
developer. When the developer brought suit asserting breach of contract, the water
authority asserted governmental immunity from suit. By interlocutory appeal, the
water authority now challenges the trial court's order denying its plea to the
jurisdiction. Concluding that the Texas Legislature waived the water authority's
immunity from suit under section 271.152 of the Texas Local Government Code, we
affirm the trial court's order.

Factual and Procedural Background

 Appellant Clear Lake City Water Authority (the "Authority") operates as a 
conservation and reclamation district under article 16, section 59 of the Texas
Constitution and chapters 49 and 51 of the Texas Water Code. (1) Appellee MCR
Corporation ("MCR") is a developer that owned land within the boundaries of the
Authority. 

 In October 1991, the Authority and MCR executed a document entitled "Sales
Agreement and Lease of Facilities" ("the Agreement"), whereby MCR agreed to
construct water distribution lines, sewer lines, and drainage facilities to service a
nine-acre residential subdivision proposed to be built on land owned by MCR, and
to construct certain street improvements as well; and the Authority agreed to purchase
the completed "Facilities." (2) Pending its purchase of the Facilities, the Authority was
entitled to lease and operate the Facilities without charge by MCR. During this
period, the Authority levied user fees and ad valorem taxes on the residential lots
within the subdivision pursuant to the terms of the Agreement. 

 The Agreement gave the Authority the right to purchase the Facilities with
either bond proceeds or with annual user fees and property taxes. Although the
Authority had the right to use general revenues to purchase the Facilities, it was not
obligated to do so and could rely solely on bond proceeds. The Authority's
obligation to pay with bond proceeds was conditioned on voter approval of bonds at
a bond election. The Authority did not promise when it would hold a bond election,
or that any bond measure would be approved by the voters. 

 The Authority conducted bond elections in May and October 1998, and in
November 2006. In each of those elections, a measure was proposed that would have
authorized the issuance of bonds sufficient to permit the Authority to purchase the
Facilities. Each time, the measures failed. 

 In September 2004, the Authority held another bond election seeking voter
approval of bond funding for other Authority projects, but did not submit a
proposition to approve bonds to finance the purchase of the Facilities. This time, the
measure regarding funding for the other Authority projects passed. 

 MCR sued the Authority, alleging that the Authority's "refusal to include in the
September 11, 2004 bond election any provision for authorization of bonds to
purchase the Facilities constitute[d] repudiation of the Agreement" because the
Authority had an implied obligation to seek voter approval for the bonds to purchase
the Facilities. Moreover, MCR asserted that under the Agreement the Authority was
obligated to purchase the Facilities out of other sources of revenue available to the
Authority, even if the voters never approved bonds to fund the purchase of the
Facilities. 

 The Authority filed a plea to the jurisdiction and motion for summary judgment
contending governmental immunity from suit barred MCR's action and MCR
responded to the plea. On November 13, 2008, the district court denied the
Authority's plea and its motion for summary judgment and this appeal followed. The Authority's Plea to the Jurisdiction

 In its sole issue, the Authority contends that the district court erred in denying
the Authority's plea to the jurisdiction and that, as a matter of law, governmental
immunity bars MCR's lawsuit.

Applicable Law and Standard of Review

A. Immunity

 When a political subdivision of the State is immune from suit under the
doctrine of governmental immunity, a court lacks subject-matter jurisdiction over the
suit. (3) Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Governmental
immunity has two components: immunity from liability and immunity from suit. 
Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit bars
suit against the entity altogether. Id. When a governmental entity enters into a
contract, that entity waives immunity from liability and voluntarily binds itself, just
as any other party would, to the terms of the contract, but that entity does not thereby
waive immunity from suit. Id. For there to be a waiver of immunity from suit in the
contract-claim context, the Legislature must have waived immunity from suit as to
the claim in question by clear and unambiguous language. See Tex. Gov't Code
Ann. § 311.034 (Vernon Supp. 2007) (providing that a statute shall not be construed
as a waiver of sovereign immunity unless the waiver is effected by clear and
unambiguous language); Tooke, 197 S.W.3d at 332-33 (requiring clear and
unambiguous language to waive governmental immunity).

 Courts have little difficulty in recognizing the Legislature's intent to waive
immunity from suit when a statute contains language expressly waiving such
immunity. See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 697 (Tex.
2003). Absent such express waiver language, Texas courts have rarely concluded that
the Legislature has waived immunity from suit. Id. In Wichita Falls Hospital, the
Texas Supreme Court noted that, in the absence of express waiver language, "we have
employed several aids to help guide our analysis in determining whether the
Legislature has clearly and unambiguously waived sovereign immunity." Id. The
court described these aids as follows:

 First, a statute that waives the State's immunity must do so
beyond doubt, even though we do not insist that the statute
be a model of "perfect clarity." For example, we have
found waiver when the provision in question would be
meaningless unless immunity were waived.

 

 Second, when construing a statute that purportedly waives
sovereign immunity, we generally resolve ambiguities by
retaining immunity. In this respect, our methodology
resembles that of the United States Supreme Court when it
considers a purported waiver of the federal government's
sovereign immunity. If the text and history of the statute
leave room to doubt whether the Legislature intended to
waive sovereign immunity, we are less likely to find a
waiver. 

 

 Third, if the Legislature requires that the State be joined in
a lawsuit for which immunity would otherwise attach, the
Legislature has intentionally waived the State's sovereign
immunity. 

 

 Finally, we are cognizant that, when waiving immunity by
explicit language, the Legislature often enacts
simultaneous measures to insulate public resources from
the reach of judgment creditors. Therefore, when deciding
whether the Legislature intended to waive sovereign
immunity and permit monetary damages against the State,
one factor to consider is whether the statute also provides
an objective limitation on the State's potential liability.


Id. at 697-98 (citations omitted). 

 Texas courts are not required to use these aids in determining whether the
Legislature clearly and unambiguously waived governmental immunity. See, e.g.,
Tooke, 197 S.W.3d at 330-45 (wherein Texas Supreme Court did not use these aids
in determining waiver of sovereign immunity.); see also Clear Lake City Water Auth.
v. Friendswood Dev. Co., 256 S.W.3d 735, 741 (Tex. App.--Houston [14th Dist.
2008, pet. dism'd) (noting that Texas Supreme Court has not held that list of aids in
determining waiver of sovereign immunity is exclusive.)

B. Standard of Review

 In filing a plea to the jurisdiction, a litigant challenges the trial court's subject
matter jurisdiction. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
Because subject matter jurisdiction is a question of law, we conduct a de novo review
of the trial court's ruling on the plea. See Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 928 (Tex. 1998). Upon review, we consider the pleadings and the evidence
pertinent to the jurisdictional inquiry; we do not consider the merits of the case. 
County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

 We review the trial court's interpretation of applicable statutes de novo. See
Johnson v. City of Forth Worth, 774 S.W.2d 653, 655-56 (Tex. 1989). In construing
a statute, our objective is to determine and give effect to the Legislature's intent. See
Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we
must ascertain that intent from language the Legislature used in the statute and not
look to extraneous matters for an intent the statute does not state. Id. If the meaning
of the statutory language is unambiguous, we adopt the interpretation supported by
the plain meaning of the provision's words. St. Luke's Episcopal Hosp. v. Agbor, 952
S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction;
instead, we must yield to the plain sense of the words the Legislature chose. See id.

Analysis 

 In 1963, the Texas Legislature created the Authority as a conservation and
reclamation district under article 16, section 59 of the Texas Constitution. See Tex.
Const. Art. XVI, sec. 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101, 1963 Tex.
Gen. Laws 164, 173. The Authority exercises the rights, powers, privileges,
authority, and functions conferred and imposed by Texas statutes regarding water
control and improvement districts. See id. Such water control and improvement
districts are political subdivisions of the State and generally are entitled to
governmental immunity. See Tarrant Reg'l Water Dist. v. Gragg, 151 S.W.3d 546,
549-50 (Tex. 2004) (concluding that water control and improvement district is
political subdivision of the State generally entitled to governmental immunity); Clear
Lake City Water Auth. v. Clear Lake Utils. Co., 549 S.W.2d 385, 391 (Tex. 1977)
(concluding that Authority is political subdivision of State). Therefore, under the
doctrine of governmental immunity, the Authority is immune from suit in this case
unless the Legislature has waived the Authority's immunity from suit by clear and
unambiguous language. See Tooke, 197 S.W.3d at 332-33; see also Tex. Gov't
Code Ann. § 311.034. In its pleadings and in its briefing, MCR asserts that the
Legislature waived the Authority's immunity from suit under section 49.066 of the
Texas Water Code, or in the alternative, under section 271.152 of the Texas Local
Government Code. See Tex. Water Code Ann. § 49.066 (Vernon 2000); Tex. Loc.
Gov't Code Ann. § 271.152 (Vernon 2005).

A. Tex. Water Code Ann. § 49.066

 Chapter 49 of the Texas Water Code applies to the Authority. See Tex. Water
Code Ann. §§ 49.001(a)(1), 49.002 (Vernon 2000 & Vernon Supp. 2009); Bexar
Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture, 220 S.W.3d 25, 29 (Tex.
App.--San Antonio 2006, pet. dism'd). Section 49.066, entitled "Suits," provides:

 (a) A district may sue and be sued in the courts of this state in the
name of the district by and through its board. A suit for contract
damages may be brought against a district only on a written contract of
the district approved by the district's board. All courts shall take
judicial notice of the creation of the district and of its boundaries.

 

 (b) Any court in the state rendering judgment for debt against a
district may order the board to levy, assess, and collect taxes or
assessments to pay the judgment.

 

 (c) The president or the general manager of any district shall be
the agent of the district on whom process, notice, or demand required or
permitted by law to be served upon the district may be served.

 

 (d) Except as provided in Subsection (e), no suit may be instituted
in any court of this state contesting:

 

 (1) the validity of the creation and boundaries of a district
created under this code:

 (2) any bonds or other obligation created under this code;
or

 (3) the validity or the authorization of a contract with the
United States by the district.

 

 (e) The matters listed in Subsection (d) may be judicially inquired
into at any time and determined in any suit brought by the State of Texas
through the attorney general. The action shall be brought on good cause
shown, except where otherwise provided by other provisions of this
code or by the Texas Constitution. It is specifically provided, however,
that no such proceeding shall affect the validity of or security for any
bonds or other obligations theretofore issued by a district if such bonds
or other obligations have been approved by the attorney general as
provided by Section 49.184. (4) 


 (f) A district or water supply corporation shall not be required to
give bond for appeal, injunction or costs in any suit to which it is a party
and shall not be required to deposit more than the amount of any award
in any eminent domain proceeding. 

 

Tex. Water Code Ann. § 49.066.


 Following Tooke, all of the courts of appeals addressing the issue of waiver
under section 49.066 have concluded that the statute does not waive the government's
immunity from suit. See Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc., No. 13-07-545-CV, 2008 WL 384320, at *2-4 (Tex. App.--Corpus Christi Feb. 14, 2008,
no pet.) (mem. op.); Boyer, Inc. v. Trinity River Auth. of Tex., 279 S.W.3d 354, 359
(Tex. App.--Fort Worth 2008, pet. denied); Bexar Metro. Water Dist. v. Education
and Economic Dev. Joint Venture, 220 S.W.3d 25, 29-32 (Tex. App.--San Antonio
2006, pet. dism'd). The Fourteenth Court of Appeals recently reached an identical
conclusion in a related case. Clear Lake City Water Auth. v. Friendswood Dev. Co.,
256 S.W.3d 735, 741 (Tex. App.--Houston [14th Dist. 2008, pet. dism'd) ("Clear
Lake I"). In holding that that statute did not waive the Authority's immunity from
suit, the court examined the four aids from Wichita Falls State Hospital. See Clear
Lake I at 744-45 (citing Wichita Falls State Hosp., 106 S.W.3d at 697-98).

 As to the first aid, the court found that the Legislature had not waived the
Authority's immunity from suit beyond doubt, and section 49.066 would not be
meaningless unless immunity from suit is waived. In reaching its conclusion, the
court examined the legislative history of the statute and noted that the Legislature had
opportunity to amend the statute in order to expressly waive immunity as to claims
based on certain types of written contracts, but failed to do so. Id. at 744.

 As to the second aid, the court found that the text and history of section 49.066
"leave room to doubt whether the Legislature intended to waive the Authority's
governmental immunity." Id. As to the third aid, the court concluded, based on a
plain reading of the statute, that the Legislature does not require in section 49.066 that
the State or the Authority be joined in any lawsuit. As to the fourth aid, also based
on a plain reading of the statute, the court concluded that section 49.066 does not
provide any objective limitation on the State's potential liability. Id.; Compare Tex.
Water Code Ann. § 49.066 (failing to impose any objective limitation on the State's
potential liability), with Tex. Loc. Gov't Code Ann. § 271.153 (Vernon 2005)
(imposing objective limits on recovery under section 271.152 by excluding recovery
for punitive damages, most consequential damages, and damages for unabsorbed
home office overhead). 

 Based on its analysis, the court concluded that none of the four Wichita Falls
State Hospital aids weighed in favor of the existence of a clear and unambiguous
waiver of immunity from suit in section 49.066 and that the Legislature did not waive
the Authority's immunity from suit by clear and unambiguous language. Id. at 745. 
Based on this analysis, our reading of the statute, and the legislative history, we are
persuaded to adopt the reasoning of our sister courts. See id; see also Rancho Viejo,
Inc., 2008 WL 384320, at *2-4; Boyer, Inc., 279 S.W.3d at 359, 2008 WL 163560,
at *3; Bexar Metro Water Dist., 220 S.W.3d at 29-32. Therefore, we hold that
section 49.066 of the Water Code does not waive the Authority's immunity from suit.

B. Tex. Loc. Govt. Code § 271.152

 MCR also contends that the Legislature waived the Authority's immunity from
suit in section 271.152 of the Texas Local Government Code. See Tex. Loc. Gov't
Code § 271.152. In 2005, the Legislature enacted subchapter I of chapter 271 of the
Local Government Code, comprising sections 271.151-.160. (5) 

 Unlike Texas Water Code section 49.066, section 271.152 of the Local
Government Code contains an express waiver of immunity from suit as to certain
breach-of-contract claims:

 A local governmental entity that is authorized by statute or the
constitution to enter into a contract and that enters into a contract subject
to this subchapter waives sovereign immunity to suit for the purpose of
adjudicating a claim for breach of contract, subject to the terms and
conditions of this subchapter.

 

Tex. Loc. Gov't Code § 271.152. 

 For the entity to waive immunity from suit as to contract claims under section
271.152, the following statutory criteria must be satisfied:

 (1) the entity must be "[a] local governmental entity that is
authorized by statute or the constitution to enter into a contract."

 

 (2) The entity must enter into "a contract subject to this
subchapter."

 

 (3) The claim must be for breach of the contract and be asserted
in a civil suit in "county or state court" or in an "authorized arbitration
proceeding" in accordance with any "mandatory procedures established
in the contract . . . for the arbitration proceedings."


 See Tex. Loc. Gov't Code §§ 271.151, 271.152. In this case, the parties do
not dispute that the first and third elements are satisfied. As to the second element,
the Authority does not dispute that it entered into the Agreement; however, the
Authority argues that the Agreement is not "a contract subject to this subchapter,"
which is defined as "a written contract stating the essential terms of the agreement for
providing goods or services to the local governmental entity that is properly executed
on behalf of the local governmental entity." Id. § 271.151(2). The Agreement is a
written contract, and the Authority has not asserted that the Agreement was not
properly executed on the Authority's behalf. However, the Authority asserts that
because 271.152's waiver applies only to contracts "stating" the agreement's essential
terms, implied agreements are excluded. Therefore, the issue at hand is whether the
Agreement "stat[es] the essential terms of the agreement for providing goods or
services to the [Authority] and whether MCR is suing on an implied contract rather
than a written contract, which therefore does not meet the requirements for waiver of
immunity." Our task is to determine if the Agreement contains the essential terms for
providing goods or services to the Authority as contemplated by section 271.151(2). 
The Agreement contains the following provisions.

 (1) The Authority is authorized to provide, among other things,
water supply, waste disposal, and drainage facilities to the
land within its boundaries;

 

 (2) MCR is developing land within the Authority and desires
that water supply, waste disposal, and drainage facilities be
provided to such land prior to the time at which the
Authority can obtain voter approval and pay for the
construction or acquisition of such facilities with the
proceeds of its bonds;

 

 (3) MCR and the Authority desire to provision for the design,
engineering, construction, acquisition, operation,
maintenance, lease, and sale of all water distribution lines,
sanitary sewers, and drainage facilities required to serve
[the subdivision], within the Authority;

 

 (4) MCR shall cause the Facilities to be constructed pursuant
to contracts in accordance with the rules of the Texas
Water Commission. MCR shall provide for the inspection
by the Authority's engineers of work performed under the
contracts. Any and all contracts or change orders to the
contracts shall be subject to approval by the Board of
Directors of the Authority (the "Board"), which approval
shall not be unreasonably withheld. The Authority's
engineers shall have the right to halt construction work
until the contractor complies with the plans and
specifications;

 

 (5) Subject to the other terms and provisions hereof, MCR
agrees to sell land the Authority agrees to purchase all
completed portions of the Facilities . . . in consideration of
the purchase price[.] It is expressly acknowledged and
agreed by the parties hereto, that the Authority has no
existing voter authorization to issue any bonds to pay for
the cost of the Facilities, and does not anticipate that funds
will be available for such costs without a voter approved
bond sale for such purchase. The Authority cannot predict
when, if ever, such an election and bond sale will occur, or
when, if ever, the Authority will have other funds available
and allocated for the purchase of the Facilities. The
Authority shall have the right to purchase the Facilities
with funds available from a source other than a bond sale
for such purpose, but shall have no obligation to do so;


 (6) MCR shall award and diligently prosecute a contract or
contracts for, and shall otherwise cause to be completed by
the time described in this section, and shall pay for all
expenses in connection with, the grading and paving of all
streets, cul-de-sacs, alleys, boulevards, avenues, ways, and
roads and the construction of all bridges (collectively, the
"Street Improvements") within the Subdivision[.];

 

 (7) MCR shall lease . . . all unacquired, completed, and
operable portions of the Facilities to the Authority . . .
without charge until such time as the Authority acquires
such portions; provided that such lease shall terminate
upon the acquisition by the Authority of all the Facilities. 
In consideration therefor, the Authority shall alone operate
and maintain the leased Facilities or cause the same to be
operated and maintained. During the term of such lease, no
alterations, improvements, or additions to the Facilities
shall be made by either party hereto without the consent of
the other party[.]


 Again, in Clear Lake I, the Fourteenth Court of Appeals examined the
applicability of Tex. Gov't Code § 271.151(2) to a nearly identical development
agreement. 256 S.W.3d at 741. In determining whether the Authority was immune
from suit under the statue, the court analyzed Ben Bolt, the only case from the Texas
Supreme Court applying the language of section 271.152(2). See Ben Bolt-Palito
Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty
Joint Self-Ins. Fund, 212 S.W.3d 320, 326-27 (Tex. 2006). There, the high court
took an expansive view of section 271.152 in determining that in it the Legislature
provided a clear and unambiguous waiver of the local governmental entity's
immunity from suit as to the contract in question. See Ben Bolt, 212 S.W.3d at
326-27. In that case, a school district filed a declaratory-judgment action against a
self-insurance fund composed of ninety-two local governmental entities. See id. at
322. The school district sought a declaration that a loss it had sustained was a
"covered occurrence" under its insurance policy with the fund. See id. at 323. The
fund asserted governmental immunity. See id.

 After determining that the fund enjoyed governmental immunity in its own
right, the Texas Supreme Court addressed whether, in section 271.152, the
Legislature had waived the fund's immunity from suit as to the declaratory-judgment
action in question. See id. at 327. The fund asserted that the agreement at issue in
the case-the insurance policy-did not involve the provision of goods or services to
the fund because the school district was simply paying the fund for insurance
coverage. See id. at 324-26. Nonetheless, the Ben Bolt court rejected this argument
based on the fund's admission that its members, including the school district in
question, elect a governing board, a subcommittee of which resolves claims disputes. 
See id. The Ben Bolt court concluded that, by participating in the election of the
fund's governing board, the school district provided services to the fund, and the high
court found that this provision of services satisfied the statutory requirement of "a
written contract stating the essential terms of the agreement for providing goods or
services to the local governmental entity." See id. The Ben Bolt court reached this
conclusion without requiring that this provision of services by the members of the
fund be stated in the agreement (the insurance policy). Even though the essence of
the agreement (insurance policy) appeared to be an insurance transaction in which the
only thing provided to the fund was money, the Ben Bolt court concluded that the
agreement fell within the scope of the statutory language because the school district
was a member of the fund and the fund's members elected the fund's governing
board.

 The Ben Bolt court acknowledged that, under section 271.152, the Legislature
has not waived immunity as to all contracts entered into by local governmental
entities; rather, it has waived immunity as to written contracts "stating the essential
terms of the agreement for providing goods or services to the local governmental
entity that [are] properly executed on behalf of the local governmental entity." Tex.
Loc. Gov't Code § 271.151(2); Ben Bolt, 212 S.W.3d at 326-27. Nonetheless, the
Ben Bolt court broadly construed the meaning of this statutory language. See Ben
Bolt, 212 S.W.3d at 326-27. Like our sister court, we apply the reasoning of Ben Bolt
to this appeal.

1. The sale of the Facilities is not a provision of goods.

 The Authority submits that the Agreement does not involve a sale of "goods"
to the Authority since the facilities have been installed and affixed to the land, and
are therefore no longer moveable. See Tex. Bus. & Com. Code Ann. § 2.105(a)
(Vernon 1994) (defining sale-of-goods contracts as involving the sale of "all things
. . . moveable . . . at the time of identification to the contract"). As a result, the
potential sale of the Facilities to the Authority does not involve the provision of
goods.

 The terms of the Agreement, however, are not limited to the sale of the
Facilities. The Agreement also provides that MCR shall hire contractors to construct
the Facilities and to build the streets, roads, and bridges for the Subdivision. As the
Fourteenth Court of Appeals noted in Clear Lake I, "[t]his action appears to be
directed towards and to benefit the Subdivision and its residents, rather than the
Authority. Likewise, based on the language of the Agreement, these services appear
to be provided to the Subdivision and its residents rather than to the Authority." 
Clear Lake I, 256 S.W.3d at 750-51. 

 In Clear Lake I, the Fourteenth Court of Appeals found "if the school district's
participation in the election of the fund's governing board was sufficient to constitute
the provision of services in the insurance contract in Ben Bolt, then we conclude that 
[the developer's] agreement to hire third parties to construct the Facilities and to build
the streets, roads, and bridges is likewise sufficient to constitute the provision of
services to the Authority. Applying the Ben Bolt court's liberal construction of the
applicable statute, we conclude that the Agreement is a written contract stating the
essential terms of the agreement for providing services to the Authority for the
construction of the Facilities as well as for the construction of streets, roads, and
bridges in the Subdivision." Id. at 750-51. 

 We are persuaded by the Fourteenth Court of Appeals' reasoning and by its
application of Ben Bolt, and follow it here. Thus, the fact that the Agreement
authorized MCR to contract with third parties for the construction of the Facilities
along with streets, roads, and bridges, is sufficient to constitute the provision of
services to the Authority within the meaning of 271.152. (6)

 

2. The Agreement is not an "implied contract."

 The Authority cites Somerset Indep. Sch. Dist. v. Casias, 2008 WL 1805533,
*3 (Tex. App.--San Antonio April 23, 2008, no pet.), in support of its argument that
because an implied contract is not a written contract, immunity is not waiver under
section 271.152 for such a claim. In Somerset, the court held that the written
agreement sued upon was a contract for sale of real estate and therefore not included
in the statute's waiver of immunity. Id. The court also held that the plaintiff could
not bring a separate claim for breach of an implied contract because an implied
contract is not a written contract as required under section 271.152. Id.

 Here, by contrast, MCR is suing on a written contract, not a separate "implied
contract." As we have held, the agreement is a written contract for the construction
of the Facilities as well as for the construction of streets, roads, and bridges in the
subdivision. The existence of any implied term within the agreement has no bearing
on whether the agreement constitutes a written contract.

 3. The Agreement does not violate the Separation of Powers or
Reserved Powers Doctrines


 The Authority also argues that if the Agreement is read to include implied
terms requiring the Authority to include a provision to purchase the Facilities in any
bond election this Court would run afoul of the separation of powers doctrine by
abrogating the Authority's legislative function of issuing bonds. In support of its
argument, the Authority cites City of Corpus Christi v. Bayfront Assocs., Ltd., 814
S.W.2d 98 (Tex. 1991).

 Bayfront Associates is inapplicable to the instant case. The agreement at issue
there was invalid to the extent that it purported to preclude a governmental entity
from holding a bond election and issuing bonds. Id. at 107. The Agreement here
does not preclude holding any bond election bond issuance. Nor does it require any
bond election or bond issuance. 

 Moreover, the Fourteenth Court of Appeals has rejected a similar argument that
the judiciary has no authority to interfere with a governmental entity's "legislative
discretion" to allocate public bond funds for the benefit of the public. "[O]nce the
Authority exercises its discretion to enter into a valid and enforceable contract, it no
longer has unfettered 'legislative direction' to decide what its obligations are and how
it will perform those obligations. Whether the contracts here are enforceable and
whether the Authority breached them is subject to review by the courts." Clear Lake
City Water Auth. v. Kirby Lake Dev. Ltd., 123 S.W.3d 735, 749 (Tex. App.--Houston
[14th Dist.] 2003, pet dism'd).

 4. There is an amount "due and owed" under the Agreement

 The Local Government Code waives sovereign immunity for breach of contract
suits on contracts subject to its terms, but limits the total amount of money to be
awarded to "the balance due and owed by the local government entity under the
contract . . . ." Tex. Loc. Gov't Code § 271.153(a)(1). The Authority argues that
immunity has not been waived in this instance because there is no amount "due and
owed" under the Agreement. According to the Authority, nothing is due and owed
to MCR until voters have approved bonds to pay for the Facilities, and the Authority
has no obligation to ensure that this condition precedent is fulfilled. 

 In City of Houston v. Southern Electrical Services, Inc., 273 S.W.3d 739 (Tex.
App.--Houston [1st Dist.] 2008, pet. denied), this Court held that a plaintiff satisfies
section 271.153(a)(1) by alleging facts to support its claim that there is a balance due
and owing under the contract. Id. at 744. The City of Houston argued that there was
no balance due under the contract at issue, but the Court rejected this argument as
going to the merits of the case, not whether the court had jurisdiction:

 The City essentially asks that we find the claim for damages lacking in
merit because nothing in the contract imposes an obligation on the City
to adjust the contract price, and thus the City owes nothing in damages. 
But an "adjudication" of such a claim is exactly what the Legislature
allows in Section 271.152. Section 271.153 does not retract the
privilege granted in Section 271.152 to adjudicate the claim for breach,
if a plaintiff alleges facts to support such a claim and seeks recovery
only of damages to the extent allowed. To observe that the claim will
fail does not deprive the trial court of jurisdiction to hear it - or in the
Legislature's own words, "adjudicate" it. SES's pleadings allege
sufficient facts to qualify this case as a waiver of sovereign immunity as
granted by statute, by alleging facts to support the claim that the City
has not paid "the balance due and owed under the contract"


Id. at 744. (citations omitted.)

 Similarly, MCR's pleadings allege sufficient facts to qualify this case as a
waiver of sovereign immunity under section 271.152. In its original petition, MCR
alleges that the Authority breached its obligation under the Agreement to purchase
the Facilities by failing to use due diligence to obtain voter approval. The central
purpose of the Agreement was that MCR would construct the Facilities and the
Authority would ultimately purchase them. Section 2.01, in which the language about
inclusion in any bond election appears, is entitled "Purchase and Assignment," and
provides that "the Developer agrees to sell and the Authority agrees to purchase all
completed portions of the Facilities . . . ." Other provisions of the Agreement set the
purchase price, address issuance of bonds to purchase the Facilities, set out the
conditions of purchase and assignment, and allow for a lease of the Facilities "without
charge until such time as the Authority acquires such portions; provided that such
lease shall terminate upon the acquisition by the Authority of all the Facilities." 
Therefore, MCR has alleged facts to support the claim that the Authority has not paid
"the balance due and owed under the Agreement." Id. at 744.

CONCLUSION


 In section 49.066 of the Texas Water Code, the Legislature did not waive the
Authority's immunity from suit by clear and unambiguous language. However,
applying the Texas Supreme Court's decision in Ben Bolt and the opinion of the
Fourteenth Court of Appeals in Clear Lake I, we conclude that the Agreement falls
within the scope of the type of contracts to which the Legislature waived immunity
in section 271.152 of the Texas Local Government Code. See Tex. Loc. Gov't
Code. §§ 271.151, 271.152; Ben Bolt, 212 S.W.3d at 326-27. Accordingly, we
overrule the Authority's issue and affirm the trial court's order denying the
Authority's plea to the jurisdiction.




 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Higley. 
1. See Tex. Const. art. XVI, § 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101,
1963 Tex. Gen. Laws 164, 173; Tex. Water Code Ann. Chs. 49, 51 (Vernon
2000 & Supp. 2007). 
2. We refer to the water distribution lines, sanitary sewer lines, and drainage
facilities collectively as the "Facilities."
3. Often, courts use the terms "sovereign immunity" and "governmental
immunity" interchangeably; nevertheless, they are two distinct concepts. 
Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). 
"Sovereign immunity" refers to a State's immunity from suit and liability. Id. 
Its protection extends not only to the State, but also to the varying divisions of
state government, including agencies, boards, hospitals, and universities. 
"Governmental immunity" protects political subdivisions of the State,
including counties, cities, and school districts. Id.
4. Section 49.184 of the Water Code refers to approval of bonds by the Attorney
General and the registration of bonds. See Tex. Water Code Ann. § 49.184
(Vernon Supp. 2009).
5. This section applies to claims that arise before its effective date of September
1, 2005:


 . . . only if sovereign immunity has not been waived with respect to the
claim before the effective date of this Act. A claim that arises under a
contract executed before the effective date of this Act and with respect
to which sovereign immunity has been waived is governed by the law
in effect on the date the contract was executed, and the former law is
continued in effect for that purpose.

 

Act of May 23, 2005, 79th Leg. R.S., ch. 604, sec. 2, 2005 Tex. Gen. Laws 1548,
1549.
6. Moreover, the legislative history of section 271.152 supports its expansive reading

 and this Court's holding. The Bill Analysis for section 271.152 states that the bill in
question "clarifies and re-expresses the legislature's intent that all local governmental entities
that are given the statutory authority to enter into contracts shall not be immune from suits
arising from those contracts, subject to the limitations set forth in C.S.H.B. 2039." House
Comm. On Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. 2005; Senate
Comm. On State Affairs, Bill Analysis, Tex. H.B. 2039, 79th Leg. R.S. 2005. The limitations
referred to are not limitations making a distinction between "goods" and "real property." 
Rather, they are (a) limitations on actual damages set forth in Section 271.153(a) (allowing
recovery of only the balance due under the contract, plus change orders, plus interest) and
(b) the concomitant exclusion of consequential and exemplary damages, and damages for
unabsorbed office overhead, in section 271.153(b). See Tex. Loc. Gov't Code §§ 271.153. 

 

 Additionally, the House's Bill Analysis expressly states that the legislation was
intended to overrule the effect of such recent cases as City of Mesquite v. PKG Contracting,
Inc., 148 S.W.3d 209 (Tex. App.--Dallas 2004) (judgment reversed by PKG Contracting,
Inc. v. City of Mesquite, 197 S.W.3d 388 (Tex. 2006) (contract for construction of a storm
drainage system)); Carrollton v. McMahon Contracting, L.P., 134 S.W.3d 925 (Tex.
App.--Dallas 2004) (judgment reversed by McMahon Contracting, L.P. v. City of
Carrollton, 197 S.W.3d 387 (Tex. 2006)((contract for street repairs)); Satterfield & Pontikes
Const., Inc. v. Irving ISD, 123 S.W.3d 63 (Tex. App.--Dallas 2003) (judgment reversed by
Satterfield & Pontikes Const., Inc. v. Irving ISD, 197 S.W.3d 390 (Tex. 2006)(contract for
new school building)). All of these cases involved real estate.